IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST PLACE BANK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 CV 2044 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| SKYLINE FUNDING, INC., MICHAEL | ) | |
| KLEIN, RANDALL P. COLEMAN, | ) | |
| KRYSTAL D. THOMPSON, | ) | |
| MARIYA RYMARUK, LOUIS BURKS, | ) | |
| LESTER TALLY, RAMONE PATTERSON, | ) | |
| TERRY MCMICHAELS, ARRELIA | ) | |
| GARDNER, SERHIY KUDIN, and | ) | |
| LEFTERI POPE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff First Place Bank filed a seven-count "amended first amended" complaint against a variety of defendants, based on six loans that plaintiff purchased from defendant Skyline Funding, Inc. ("Skyline") and which allegedly failed to comply with terms of a broker agreement between plaintiff and Skyline, in addition to various underwriting requirements and warranties. Count I alleges a breach of contract claim against Skyline. Counts II and III are claims against Skyline and three appraisers (Randall Coleman, Krystal Thompson, and Lefteri Pope), for negligent misrepresentation and fraudulent misrepresentation, respectively. Count IV alleges a claim for fraudulent concealment against all defendants, including borrowers such as Lester Tally, whom plaintiff claims made material misrepresentations on his loan application to Skyline. Count V alleges a negligence claim against Skyline, Michael Klein (Skyline's president), and the three appraisers. Finally, Counts VI and VII assert claims for breach of contract and fraudulent concealment, respectively, against Klein based on an alter ego/piercing

the corporate veil theory. Defendants Skyline and Klein, Tally, Coleman, and Thompson have all filed motions to dismiss the claims against them which, for the following reasons, the court grants.

## **BACKGROUND**[1]

In April 2009, plaintiff entered into a broker agreement ("Agreement") with Skyline, whose primary business is originating residential mortgages. Prior to entering into the Agreement, plaintiff had purchased six mortgages from Skyline.[2] Plaintiff alleges that after buying the mortgages from Skyline, it sold them to Fannie Mae,[3] although the exhibits attached to the complaint contradict this allegation and indicate that plaintiff sold at least some of the loans to unnamed investors,[4] GMAC Mortgage Corporation,[5] and Ally Bank.[6]

---

[1] The following facts come from the first amended complaint, and for purposes of evaluating defendants' motion to dismiss, the court accepts them as true.

[2] These loans were originated for the following borrowers: Mariya Rymaruk, Louis Burks, Lester Tally, Ramone Patterson, Serhiy Kudin, and Terry McMichales and Arrelia Gardner.

[3] For example, paragraph 26 of plaintiff's complaint states: "During the last quarter of 2009, First Place Bank began to receive notices from Fannie Mae indicating that certain of the loans First Place Bank purchased from Skyline and <u>subsequently sold to Fannie Mae</u> were not in compliance with Fannie Mae Guidelines and the Agreement, and/or were otherwise in default." Paragraph 31 states: "Skyline failed to comply with various material terms and conditions of the Agreement, which resulted in First Place Bank unknowingly purchasing deficient loans from Skyline, and <u>subsequently selling such loans to Fannie Mae</u>." Paragraph 32 states: "Over the past several months, Fannie Mae has rejected and returned to First Place Bank for reimbursement certain mortgage loans that First Place Bank purchased from Skyline and <u>subsequently sold to Fannie Mae</u>." (Emphases added).

[4] A letter from plaintiff to defendant Klein dated December 11, 2009, states that "[s]oon after the purchases, First Place bank sold the [Rymaruk, Burks, Tally, and Patterson] loans to investors."

[5] For example, the reimbursement demand letters from Fannie Mae to plaintiff regarding
(continued...)

In the fall of 2009, Fannie Mae began notifying plaintiff that these loans were not in compliance with Fannie Mae's guidelines (for various reasons, including flawed real estate appraisals, misrepresentation of credit, and undisclosed liabilities), and demanded that plaintiff repurchase the loans.[7] (The complaint does not make clear if or when plaintiff in fact repurchased the loans or otherwise incurred losses.) In December of that year, plaintiff in turn demanded that Skyline repurchase some of the nonconforming loans (Rymaruk, Burks, Tally, and Patterson) as required by Section 11 of their Agreement. Skyline failed to respond to plaintiff's demand letter within 15 days, as required by the Agreement. On January 4, 2010, after the deadline had passed, Klein wrote to plaintiff. He explained that Skyline had just dissolved and had been winding down over the preceding several months, and informed plaintiff that no company was to succeed Skyline. Several months later, plaintiff filed the instant lawsuit.

## DISCUSSION

**I.     Legal Standards**

---

[5](...continued)
the Burks loan, the Tally loan, and the Patterson loan each list GMAC Mortgage Corporation as the seller and GMAC Mortgage, LLC, as the servicer. The letter regarding the McMichales/Gardner loan lists GMAC Mortgage Corporation as the seller and Nationstar Mortgage, LLC, d/b/a Champion Mortgage Company, as the servicer.

[6] The reimbursement demand letter from Fannie Mae to plaintiff regarding the Rymaruk loan lists Ally Bank as the seller and servicer.

[7] Fannie Mae demanded reimbursement for the Rymaruk loan on October 15, 2009; for the Burks loan on November 17, 2009; for the Tally loan on November 23, 2009; for the Patterson loan on December 4, 2009; on January 11, 2010, for the McMichales/Gardner loan; and on April 6, 2010, for the Kudin loan.

3

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation and internal quotation omitted). The court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citations omitted). To provide the defendant with "fair notice of what the claim is and the grounds upon which it rests," id. at 555, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, its allegations must plausibly suggest that the plaintiff has a right to relief and raise that possibility above the "speculative level." Twombly, 550 U.S. at 555, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004). Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. Fed. R. Civ. P. 10(c).

Allegations of fraud are subject to a heightened pleading standard. Fed. R. Civ. P. 9(b). Fraud must be pled with particularity, which means the complaint must allege the "who, what, when, where and how" of the fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). In a multiple-defendant case, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." Vicom, Inc. v. Harbridge Merchant Servs., 20 F.3d 771, 778 (7th Cir. 1994) (citation omitted).

**II.     Defendants Klein and Skyline's Motion to Dismiss**

**Count I: Breach of Contract**

4

Plaintiff alleges that defendants Skyline and Klein breached the material terms of the Agreement, which Skyline and Klein entered into on April 27, 2009, by selling it six loans that failed to comply with the Agreement's terms and then failing to repurchase those loans. But according to exhibits attached to the complaint, plaintiff purchased each of the six loans <u>before</u> April 2009.[8] Plaintiff's complaint fails to allege that the Agreement applies retroactively, and nowhere does plaintiff explain its assertion that these loans are subject to the Agreement. In reviewing a motion to dismiss, the court need not "credit a complaint's conclusory statements without reference to its factual context." <u>Iqbal</u>, 129 S.Ct. at 1954. Here, plaintiff provides no factual backing for its bare assertion that the loans are subject to the Agreement, and this assertion is explicitly undermined by the Agreement's April 2009 date. Thus, even assuming that plaintiff's factual allegations are entirely true, plaintiff has failed to state a plausible claim for breach of contract.

Further, the complaint fails to establish any basis for recovery under a breach of contract claim. Section 11 of the Agreement required Skyline, in the event of a breach, to repurchase the loans within 15 days, and provided that if Skyline was unable to do so, plaintiff would service the loans and bill Skyline for those costs and expenses. The complaint does not, however, allege that plaintiff owned the loans when it demanded Skyline repurchase them, and thus that it would have been possible for Skyline to repurchase the loans. On the contrary, the exhibits attached to the complaint indicate that as of December 11, 2009, plaintiff had sold some of the loans to investors and that some of the properties had already gone to foreclosure. Without alleging that

---

[8] Skyline sold the Ryamaruk loan to plaintiff on February 11, 2009; the Burks loan on August 10, 2007; the Tally loan on June 13, 2007; the Patterson loan on November 30, 2007; the McMichaels/Gardner loan on August 16, 2007; and the Kudin loan on December 14, 2007.

plaintiff had the loans when it made its demand to Skyline, the complaint does not allow the court to conclude that Skyline could have repurchased the loans. Similarly, the complaint lacks factual support for its assertion that plaintiff has suffered losses. The complaint alleges that because Fannie Mae has rejected the loans, plaintiff "has incurred (or in some cases will soon incur) substantial losses in resolving Fannie Mae's reimbursement demands." This assertion, however, is not accompanied by allegations that plaintiff has in fact paid any of Fannie Mae's demands or otherwise suffered any actual loss. Plaintiff has thus failed to state a claim, and the court accordingly dismisses Count I.

**Counts II and V: Negligent Misrepresentation and Negligence**

Plaintiff's claims against Skyline and Klein for negligent misrepresentation (Count II) and negligence (Count V) are barred by the economic loss doctrine articulated in Moorman Mfg. Co. v. Nat'l Tank Co., 91 Ill.2d 69, 88-89 (Ill. 1982). In Moorman, the Illinois Supreme Court held that a plaintiff "cannot recover for solely economic loss under the tort theories of strict liability, negligence, and innocent misrepresentation." Id. at 91. Because plaintiff seeks damages for its alleged monetary loss, these claims fall squarely within the definition of a pure economic loss.

Plaintiff does not challenge the application of the Moorman doctrine to Count V, but attempts to avoid the same inevitable conclusion as to Count II by arguing that Skyline falls within the information-provider exception, which allows that economic loss may be recovered when "one who is in the business of supplying information for the guidance of others in their business transactions makes negligent misrepresentations." Moorman, 91 Ill. 2d at 88-89. The complaint does not, however, include allegations that allow the court to conclude that Skyline's

6

business was supplying information to guide others in their business transactions. Instead, it states that "Skyline, which is engaged in the business of originating loans, provides information as part of its business." That is not enough. For the information-provider exception to apply, plaintiff must allege that the providing of information was "central to the business transaction between the parties." Guaranty Residential Lending, Inc. v. Int'l Mortg. Center, 305 F.Supp.2d 846, 864 (N.D. Ill. 2004). According to the complaint, Skyline's primary business was originating loans, not providing information. Plaintiff has thus failed to state a claim for negligent misrepresentation, and Counts II and V are dismissed.

**Counts III, IV, and VII: Fraud Claims**

Skyline and Klein argue that because plaintiff has failed to satisfy the heightened pleading requirement of Rule 9(b), each count alleging fraud (Count III for fraudulent misrepresentation and Counts IV and VII for fraudulent concealment) should be dismissed. The parties seem to agree that the body of the complaint—which includes only bare legal conclusions that Skyline and Klein made fraudulent misrepresentations and fraudulently concealed information—does not sufficiently allege the "who, what, when, where, and why" of these claims. Plaintiff nonetheless argues that the repurchase demand letters from Fannie Mae to plaintiff, attached as exhibits to the complaint, serve the function of supplying the requisite specificity. Plaintiff is incorrect.

The exhibits do not compensate for the complaint's failings, primarily because they do not identify the specific fraudulent information or specify who misrepresented and concealed it. The repurchase letters are merely evidence that Fannie Mae believed that, based on errors in the appraisals and loan applications, the loans did not meet Fannie Mae's guidelines. They do not

7

allege who—whether Skyline, Klein, or someone else—made misrepresentations or concealed information that may have led to errors in the appraisals and loan applications. To assert a claim of fraudulent misrepresentation, plaintiff must allege how or why Skyline and Klein knew this information was false, when it was communicated, and to whom. The complaint does none of that; it alleges only that the inaccurate information originated with the appraisers or borrower.

Further, to claim fraudulent concealment, plaintiff must allege some facts supporting its claim that Skyline and Klein concealed information, that plaintiff could not have discovered this information on its own, or that Skyline and Klein had a special or fiduciary relationship with plaintiff that would have created a duty to speak. See Stewart v. Thrasher, 610 N.E.2d 799, 804 (Ill. App. Ct. 1993) (reciting the elements of a fraudulent concealment claim). Plaintiff has not pleaded any facts supporting these elements. Instead, the complaint merely alleges generally that Skyline and Klein, with intent to deceive, concealed information they knew was material to loan approval. Not only does plaintiff fail to allege facts supporting its fraudulent concealment claim, but the complaint itself prevents the court from constructing a plausible story consistent with Skyline and Klein's liability for fraudulent concealment. The complaint repeatedly notes that "had Skyline conducted even a cursory review" of the appraisals and credit reports, it would have discovered the false information. Given these assertions, it is highly implausible that plaintiff could not have learned the information from its own "cursory review."

Moreover, because plaintiff's sole specific allegation—that Skyline or its agent fraudulently prepared an appraisal using someone else's name—is based on "information and belief," it does not satisfy Rule 9(b)'s heightened pleading requirement. It is generally insufficient to plead the circumstances constituting fraud based on information and belief unless

8

the plaintiff could not access the facts, "in which event he had to plead the grounds for his suspicions." Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683-84 (7th Cir. 1992) ("The allegations . . . are not merely details of the plaintiff's theory of fraud . . . . Without those allegations, all the count alleges is that Old Republic and LKA settled a lawsuit. They are essential, but being based on information and belief must be disregarded."). Plaintiff has not alleged that the requisite facts were inaccessible, and the complaint does not provide the grounds for suspicions of fraud. The court accordingly disregards this allegation.

Because plaintiff has failed to comply with Rule 9(b)'s heightened pleading requirements and has failed to state a claim upon which relief can be granted, the court dismisses Counts III, IV, and VII.

**Counts VI and VII: Piercing the Corporate Veil**

Counts VI and VII asks the court to pierce the corporate veil to hold Klein liable for Skyline's alleged breach of contract and fraudulent concealment. A court may pierce the corporate veil when the corporate entity "would otherwise present an obstacle to the protection of private rights, or where the corporation is merely the alter ego or business conduit of the governing or dominant personality." Hystro Products, Inc. v. MNP Corp., 18 F.3d 1384, 1390 (7th Cir. 1994) (interpreting Illinois law). Illinois courts require a plaintiff to plead both "a unity of interest and ownership [such] that the separate personalities of the corporation and the individual no longer exist," and that failure to pierce the corporate veil "would sanction a fraud or promote injustice." Sea-Land Servs., Inc. v. Pepper Source, 941 F.2d 519, 520 (7th Cir. 1991) (citation omitted). To determine whether a unity of interest and ownership exists, the court considers four factors: (1) failure to comply with corporate formalities or maintain adequate

9

corporate records; (2) commingling of funds or assets; (3) undercapitalization; or (4) failure to maintain an arm's length relationship with related entities. Van Dorn Co. v. Future Chemical and Oil Corp., 753 F.2d 565, 570 (7th Cir. 1985).

Plaintiff has not sufficiently alleged a unity of interest and ownership between Skyline and Klein. Plaintiff alleges that Klein was the president of Skyline, directed its decisions, and maintained "dominion and control" over it. These allegations suggest nothing more than what every corporate president is paid to do. Plaintiff further alleges that Klein knew or should have known that the loans were flawed, that he concealed that information from plaintiff with intent to deceive, and that he was "reckless and irresponsible" in his decisionmaking. These conclusory allegations are entirely unsupported by any plausible factual basis. Thus, they do not meet the heightened pleading requirement of Rule 9(b) necessary for Count VII, nor do they suffice for the lower threshold necessary for Count VI.

Even if the complaint had alleged facts to establish a unity of interest and ownership, plaintiff's claims against Klein also fail to establish that, in this case, failure to pierce the corporate veil would sanction a fraud or promote injustice. The only allegations that might support such a theory is plaintiff's claim that instead of complying with the terms of the Agreement, Klein dissolved Skyline, left no assets in the company to meet Skyline's obligations, and failed to provide advance notice to creditors. Apart from these allegations, which on their own do not support a claim to pierce the corporate veil, nothing suggests that Klein's conduct renders him personally liable for Skyline's debts. Plaintiff has pleaded insufficient facts to support its alter ego theory, and the court thus has no reason to pierce the corporate veil. Counts VI and VII are dismissed.

**III.     Defendant Tally's Motion to Dismiss**

Defendant Lester Tally acquired a $195,000 mortgage from Skyline on June 13, 2007. On the same day, Skyline assigned the mortgage to plaintiff. On July 5, 2007, plaintiff assigned the mortgage to GMAC Mortgage, LLC ("GMAC"). In 2008, GMAC filed a complaint to foreclose the mortgage in the Chancery Division of the Circuit Court of Cook County. <u>GMAC Mortage, LLC v. Tally</u>, No. 08 CH 002260, alleging that as of October 1, 2007, Tally had stopped making his monthly mortgage payments. On May 9, 2009, Tally consented to the entry of a judgment of foreclosure pursuant to 735 Ill. Comp. Stat. 5/15-1402. <u>Id</u>.

Plaintiff has asserted a claim against Tally for fraudulent concealment (Count IV), alleging that he failed to disclose in his loan application that, while he was applying for that mortgage, he was also obtaining mortgages on two other properties and thereby taking on $235,000 of additional debt. According to plaintiff, Fannie Mae thereby sustained losses when it bought Tally's mortgage from plaintiff, and in November 2009, demanded reimbursement from plaintiff. Tally now moves to dismiss the claim against him, arguing that plaintiff both lacks standing and has failed to state a claim against him.

Because plaintiff has failed to state a claim against Tally, the court grants Tally's motion to dismiss. The complaint does not allege that Tally made any representation or omitted any information in communicating with plaintiff, nor does it allege that Tally intended to induce plaintiff to take any action regarding the loan. The complaint does not even state that Tally was aware of plaintiff when he submitted his loan application to Skyline. Rather, plaintiff appears to believe that if Skyline breached its duty to plaintiff, and Tally received a loan from Skyline, Tally must have fraudulently concealed information from plaintiff.

As discussed above, however, a plaintiff asserting a claim for fraudulent concealment must do more. The complaint must contain allegations, bolstered by some factual support, that the defendant concealed information, that plaintiff could not have discovered this information on its own, or that the defendant had a special or fiduciary relationship with plaintiff that would have created a duty to speak. See Stewart, 610 N.E.2d at 804. As with plaintiff's claim against Skyline and Klein, plaintiff has not pleaded any facts supporting these elements of fraudulent concealment. Further, the complaint emphasizes that "had Skyline conducted a review of Tally's credit report, it would have become aware of significant credit concerns, not the least of which was his simultaneously seeking mortgages on two other properties he was purchasing . . . ." This assertion makes it impossible for the court to conceive of a factual scenario in which plaintiff could not have learned the information on its own.

Moreover, the complaint fails to establish that plaintiff has standing. According to the complaint's exhibits and the exhibits offered by Tally, plaintiff sold and assigned the loan to GMAC, which foreclosed on it, and final judgment has been entered in that case. In assessing a factual challenge to the court's subject matter jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whether evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Evers v. Astrue, 536 F.3d 651, 656-57 (7th Cir. 2008) (citations and quotations omitted), quoted in Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 444 (7th Cir. 2009). Tally has indeed produced evidence that calls plaintiff's standing into question: an Assignment of Mortgage,

dated July 5, 2007, by which plaintiff assigned its interest in Tally's mortgage to GMAC.[9]
Moreover, Fannie Mae's demand letter to plaintiff, which is attached as an exhibit to the complaint, also supports this interpretation: it lists GMAC Mortgage Corporation as the seller of the mortgage and GMAC Mortgage, LLC as the servicer. It is therefore unclear that plaintiff now has standing to proceed against Tally.

The court therefore dismisses Count IV as to defendant Tally.

## IV.    Defendant Coleman's Motion to Dismiss

Finally, defendant Randall Coleman moves to dismiss the claims alleged against him in Counts II, III, IV, and V. For the following reasons, the court grants his motion.[10]

**Counts II and V**

Coleman maintains that plaintiff's claims of negligent misrepresentation (Count II) and negligence (Count V) fail to state a claim against him because they are barred by the economic loss rule in Moorman, 91 Ill.2d 69 (1982). Because plaintiff does not contest the Moorman doctrine's applicability to Count V, the court dismisses this claim.

---

[9] The letter is attached as Exhibit C to GMAC's foreclosure complaint, which Tally attached to his motion to dismiss and which plaintiff does not challenge.

[10] Coleman also argues, incorrectly, that plaintiff failed to state a claim against him because its amended complaint alleges that Skyline or its agent misappropriated his name and appraiser's license to submit the appraisal for the Rymaruk loan, thus pleading itself out of court with respect to its claims against him. This argument relies on a misunderstanding of the complaint, which alleges only that Coleman contends he did not prepare the appraisal: "According to Coleman, some unknown person prepared the appraisal having stolen Coleman's identity. On information and belief, Skyline or an agent of Skyline fraudulently prepared the appraisal." Other portions of the complaint allege that, despite Coleman's protestations, it is plaintiff's position that Coleman prepared the appraisal.

13

As for plaintiff's negligent misrepresentation claim, despite plaintiff's assertions to the contrary, Illinois courts have not expressly extended the information-provider exception to real estate appraisers such as Coleman. In <u>Lake County Grading of Libertyville, Inc. v. Great Lakes Agency, Inc.</u>, 589 N.E.2d 1128, 1131 (Ill. App. Ct. 1992), the only case cited by plaintiff for this proposition, the Illinois Appellate Court stated in dicta that the exception for information providers includes "negligent misrepresentation by one who is in the business of supplying information . . . such as . . . appraisers." <u>Id.</u> at 1131. But in holding that an insurance broker was excepted from the <u>Moorman</u> doctrine, that court distinguished its holding from that of <u>Bulk Serv. Corp. v. Buick</u>, 561 N.E.2d 120 (Ill. App. Ct. 1990) (holding that insurance consultant was barred by <u>Moorman</u>), based on the fact that the plaintiff in <u>Bulk Serv. Corp.</u> had "failed to allege that the defendant was in the business of supplying information to its customers." <u>Id.</u> at 1132. Similarly, in the instant case, the complaint alleges only that Coleman "provides information as a part of his business," rather than as the primary purpose of his business. Thus, because plaintiff has failed to allege that Coleman's business supplied primarily information and fits within the exception to the <u>Moorman</u> doctrine, plaintiff has failed to state a claim upon which relief can be granted.

**Counts III and IV**

For the reasons discussed above with regard to defendants Skyline and Klein's motion to dismiss, the court dismisses Count III and IV with respect to defendant Coleman. These claim

for fraudulent misrepresentation and fraudulent concealment fail to comply with Rule 9(b)'s heightened pleading requirements.[11]

## IV. Defendant Thompson's Motion to Dismiss

Defendant Krystal Thompson, acting pro se, also moves to dismiss the claims against her in Counts II-V, arguing that her appraisal reflected an accurate market value. Although her motion raises a substantive defense rather than challenging the sufficiency of the complaint, the court dismisses the claims against her for the same reasons the court dismisses plaintiff's identical claims against defendant Coleman, also an appraiser.

## **CONCLUSION**

For the foregoing reasons, the court grants Skyline and Klein's, Tally's, Coleman's, and Thompson's motions to dismiss.

**ENTER:** March 4, 2011

_Robert W. Gettleman_

---

[11] Coleman unpersuasively argues that plaintiff's claim of fraudulent misrepresentation should be dismissed because under Illinois law, appraisals are merely opinions, not statements of fact sufficient to support a fraud claim. In support of this proposition, he cites to only one case, Sampen v. Dabrowski, 584 N.E.2d 493 (Ill. App. Ct. 1991), but that case does not necessarily support Coleman's position. See Zions First Nat. Bank v. Paul Green, 2007 WL 4109125, at * (Nov. 16, 2007) ("Sampen dealt with consumer fraud and breach of contract claims and, to the extent that it discussed the opinion-like nature of an appraisal, it suggests that the issue is dependent on the facts at hand."). Moreover, Coleman's theory that appraisals are always considered mere opinions is undermined by Duhl v. Nash Realty, Inc., 429 N.E.2d 1267 (Ill. App. Ct. 1981), in which the court upheld a fraud claim based on a real estate broker's inaccurate appraisal. See also id. at 1273 ("[T]he defendants' [appraisal] in this case could be found to have been meant by the parties to be understood as statements of fact to be relied upon rather than as expressions of mere opinion to be accepted solely as such.").

**Robert W. Gettleman**
**United States District Judge**