IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST PLACE BANK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 CV 2044 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| SKYLINE FUNDING, INC., MICHAEL | ) | |
| KLEIN, KRYSTAL D. THOMPSON, | ) | |
| MARIYA RYMARUK, LOUIS BURKS, | ) | |
| LESTER TALLY,[1] RAMONE PATTERSON, | ) | |
| TERRY MCMICHALES, ARRELIA | ) | |
| GARDNER, and SERHIY KUDIN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff First Place Bank filed an nine-count second amended complaint ("complaint") against a variety of defendants, based on six loans that defendant Skyline Funding, Inc. ("Skyline") originated and subsequently sold to plaintiff. The complaint alleges claims for: breach of contract (against Skyline, Count I, and its president, Michael Klein, Count VI); express contractual indemnification (against Skyline,[2] Count II); negligent misrepresentation (against Skyline, Count III); fraud in the inducement (against Skyline and Klein, Count IV); and fraudulent representations and concealment (against Skyline and Klein, Count V). The complaint also alleges claims for negligent misrepresentation (Count VII) and fraudulent

---

[1] The complaint's caption uses the "Tally" spelling, but the body of the complaint, and plaintiff's response brief, intermittently use "Talley." For simplicity's sake (and to save ink), the court will use "Tally."

[2] Although plaintiff includes Klein as a defendant in its caption to Count II, the allegations and the prayer for relief do not mention Klein or seek relief against him. The court therefore construes Count II as stating a claim against Skyline only.

misrepresentation (Count VIII) against defendants Randall Coleman and Lefteri Pope, both of whom plaintiff has voluntarily dismissed, and Krystal Thompson. Finally, the complaint alleges a claim for fraudulent misrepresentation against the borrowers for whom the six loans were originated: Mariya Rymaruk, Louis Burks, Lester Tally, Ramone Patterson, Serhiy Kudin, and Terry McMichales and Arrelia Gardner.

Skyline and Klein have filed the instant motion to dismiss the claims against them—Counts I-VI—pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).[3] For the following reasons, the court grants Skyline and Klein's motion in part and denies it in part.

## BACKGROUND

The following facts come from the complaint, and for purposes of evaluating defendants' motion to dismiss, the court accepts them as true. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citations omitted). In May 2004, plaintiff and Skyline entered into a broker agreement ("Agreement"), which required that all loans Skyline sold to plaintiff were to conform to Fannie Mae guidelines.

Section 5 of the Agreement required Skyline to maintain an errors and omissions insurance policy and a Fidelity Bond covering personnel who originate loans purchased by plaintiff, with per claim limits of at least $100,000. Section 9 provided that Skyline "represent[ed] and warrant[ed] with respect to each Mortgage Loan" that, among other things: Skyline was the sole owner of and had indefeasible title to each mortgage loan (9.1); the loan

---

[3] Along with its 22-page response brief, plaintiff filed a motion for leave to file a brief in excess of 15 pages, which plaintiff should have noticed for presentment per Local Rule 5.3(b). Due to plaintiff's failure to file a notice of motion, the court has not yet ruled on it. Although the court herein grants plaintiff's motion for leave to file excess pages, it cautions plaintiff that, going forward, the rules will be strictly enforced.

was current as to payment of principal, interest and escrow items, and not in default (9.6); an appraiser had performed an appraisal of the property in accordance with all federal and state laws (9.7); the mortgage created a valid and enforceable first lien (9.10); the mortgage complied with "all underwriting requirements and warranties issued by Fannie Mae, as amended (and Freddie Mac, if applicable) and [plaintiff's] Procedure Guide" (9.12); and the note and security instrument delivered to plaintiff were genuine and unaltered (9.13). Section 3.2 required Skyline to submit credit packages complying with plaintiff's Procedure Guide and Broker Wholesale Lending Manual. Section 11 provided that if any loans failed to conform to any of the applicable guidelines, Skyline would either repurchase them, or if Skyline "refused or was unable to" do so, plaintiff could service the loan for Skyline and bill it for costs and expenses, and Skyline would be required to "indemnify [plaintiff] for all costs, expenses and losses incurred in servicing the loan and/or in repossessing and disposing of the mortgaged property." Finally, the Agreement's indemnification provision (section 10) required Skyline to indemnify plaintiff against "any and all loss, cost, damage, injury or expense," including attorneys fees, that plaintiff incurred as a result of "the untruthfulness of any of the warranties or representations of [Skyline] made in or pursuant to this Agreement" or Skyline's "failure to perform or observe any of the covenants or provisions of this Agreement."

Under the Agreement, plaintiff purchased six mortgage loans that Skyline had originated for Mariya Rymaruk, Louis Burks, Lester Tally, Ramone Patterson, Serhiy Kudin, and Terry McMichales and Arrelia Gardner. Plaintiff subsequently sold each of the six loans to Fannie Mae. After selling the loans to Fannie Mae, plaintiff "was notified," ostensibly by Fannie Mae although the complaint does not say so, that the loans failed to conform to its guidelines, in

violation of section 9.12 of the Agreement. Fannie Mae demanded that plaintiff repurchase the Rymaruk, Burks, Tally, Kudin, and McMichales/Garder loans, and plaintiff complied. Plaintiff does not, however, specifically allege that it repurchased the Patterson loan or that Fannie Mae demanded that it do so; nor does plaintiff attach, as it does for the other loans, a demand letter from Fannie Mae to plaintiff regarding repurchase of the Patterson loan. Plaintiff does allege that "[d]ue to its [initial] purchase of the Patterson note and mortgage, First Place Bank has suffered losses including administrative charges associated with the failure to comply to [sic] the Fannie Mae guidelines."

Plaintiff alleges that, in turn, it wrote to Skyline and demanded that Skyline repurchase the loans. Specifically, plaintiff alleges that "[o]n or about December 11, 2009, due to Skyline's material breach of the Agreement, First Place Bank submitted a written demand letter to Skyline that it repurchase the non-conforming loans." Plaintiff is apparently alleging that in this letter it demanded repurchase of all six of the subject loans, but plaintiff must know this allegation is disingenuous; the letter (which plaintiff attached as Exhibit 3 to its amended first amended complaint, but did not attach to the instant second amended complaint) demanded repurchase of only the Rymaruk, Burks, Tally, and Patterson loans. In the December 11 letter, plaintiff did not demand that Skyline repurchase the McMichales/Gardner loan or the Kudin loan.

The court considers this December 11 letter as part of the complaint. Guaranty Residential Lending, Inc. v. Int'l Mortg. Center, Inc., 305 F.Supp.2d 846, 852 (N.D. Ill. 2004) (citing Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002) ("[D]ocuments that are referred to in the complaint and that are central to a claim that is made may be considered to be part of the complaint even if not actually attached to the complaint.");

4

Menominee Indian Tribe of Wisconsin v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998) ("[J]udicial notice of . . . documents contained in the public record . . . is proper."); see also Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994) (court may take judicial notice of public court documents filed in earlier state court case without converting a motion to dismiss into a summary judgment motion); Brown v. Ghosh, No. 09 CV 02542, 2010 WL 3893939, at *4 n.3 (N.D. Ill. Sept. 28, 2010) (court may take judicial notice of administrative grievances attached to plaintiff's initial pro se complaint, but not attached to his amended complaint, when considering a motion to dismiss the amended complaint); Granger v. Kayira, No. 08-CV-39, 2009 WL 3824710, at *2 n.3 (N.D. Ill. Nov. 12, 2009) (same). Further, "[w]here the document may properly be considered . . . the actual document will override inconsistent descriptions of the document alleged in the body of the complaint." Guaranty Residential Lending, Inc., 305 F.Supp.2d at 852 (citing Rosenblum, 299 F.3d at 661). The court therefore construes the complaint as alleging that plaintiff asked Skyline to repurchase the Rymaruk, Burks, Tally, and Patterson loans.

Plaintiff initially received no response to that demand for repurchase. Section 11 of the Agreement required that if any of the Agreement's warranties were breached, Skyline would "repurchase the affected loan or loans within fifteen (15) days of written demand by [plaintiff]." After the 15-day deadline had passed, Klein wrote to plaintiff. He explained that Skyline had just dissolved and had been winding down over the preceding several months, and informed plaintiff that no company was to succeed Skyline.

## DISCUSSION

I. **Legal Standards**

Plaintiff incorrectly urges the court to consider that "[d]ismissal would only be appropriate if 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,'" Petri v. Gatlin, 997 F.Supp. 956, 963 (N.D. Ill. 1997) (citing Ledford v. Sullivan, 105 F.3d 354, 356) (7th Cir. 1997)), and that a "'suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim.'" Graehling v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995). This "no set of facts" standard, based on language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), is no longer good law. See Twombly, 550 U.S. at 563 ("[T]he phrase is best forgotten."); Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 618 (7th Cir. 2007) ("[Twombly] retooled federal pleading standards, retiring the oft-quoted Conley formulation.").

Rather, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation and internal quotations omitted). To provide the defendant with "fair notice of what the claim is and the grounds upon which it rests," id. at 555, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, its allegations must plausibly suggest that the plaintiff has a right to relief and raise that possibility above the "speculative level." Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." Id. Documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. Fed. R. Civ. P. 10(c). When the complaint's allegations are contradicted by exhibits, "the exhibits trump the allegations." Abcarian v. McDonald, 617 F.3d 931, 933 (7th Cir. 2010).

Allegations of fraud are subject to a heightened pleading standard. Fed. R. Civ. P. 9(b). Fraud must be pled with particularity, which means the complaint must allege the "who, what, when, where and how" of the fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). In a multiple-defendant case, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." Vicom, Inc. v. Harbridge Merchant Servs., 20 F.3d 771, 778 (7th Cir. 1994) (citation omitted).

## II. Defendants Skyline and Klein's Motion to Dismiss

**Counts I and II: Breach of Contract and Express Contractual Indemnification**

Count I alleges that Skyline breached the following provisions of the Agreement: sections 5, 9.7, 9.12, 9.13, 10, and 11 with respect to the Rymaruk loan; sections 3.2, 9.10, 9.12, and 9.13 with respect to the Burks loan; sections 3.2, 9.10, 9.12, and 9.13 with respect to the Tally loan; section 9.12 with respect to the Patterson loan; sections 3.2, 9.10, 9.12, and 9.13 with respect to the McMichales/Gardner loan; and section 9.7 with respect to the Kudin loan. Count I further alleges that "[a]dditionally, for each of the loans, Skyline breached Secs. 10 and 11 by failing to indemnify [plaintiff] for each of its losses, and for failure to repurchase the loans upon receiving notice that each loan did not comply with requirements," and that "[f]or each loan, Skyline also breached Sec. 5 of the Agreement by failing to procure errors and omissions insurance or a Fidelity Bond with per claim limits of at least $100,000." Finally, Count

7

II—which is more properly considered a subset of Count I rather than a freestanding claim—alleges that Skyline "has breached the Agreement and the express indemnification provision contained therein" by failing to indemnify it and by failing "to perform or observe several covenants and provisions of this Agreement . . . (See Count I, supra)."

In dismissing plaintiff's first amended complaint, the court expressed concerns that plaintiff had failed to establish standing because it did not allege that it in fact repurchased the loans from Fannie Mae, or that it owned the loans when it demanded that Skyline repurchase them. Moreover, exhibits attached to the previous complaint, and attached again as exhibits to the instant complaint, affirmatively demonstrated (and continue to demonstrate) that because some of the properties had gone to foreclosure or had been sold to other investors, Fannie Mae could not have resold those loans to plaintiff, nor could Skyline have repurchased those loans from plaintiff.

Plaintiff has attempted to address these concerns by adding allegations that it in fact repurchased each of the loans (except the Patterson loan) from Fannie Mae and owned the loans when it demanded that Skyline repurchase them. Plaintiff also added allegations that, for the loans that went to foreclosure, "[t]he foreclosure did not alter [its] obligation to repurchase the note from Fannie Mae, nor did it alter Skyline's obligation to repurchase the note from First Place Bank." But even reading the complaint in the light most favorable to plaintiff, these claims are nonsensical. In Illinois, where the subject properties are located, a default order or foreclosure decree merges the real estate mortgage and the mortgage indebtedness into a judgment. See, e.g., Carter Oil Co. v. Durbin, 34 N.E.2d 407 (1941). Thus, plaintiff could not have repurchased loans that had gone to foreclosure, and Skyline could not have breached the

8

Agreement by failing to repurchase loans that plaintiff did not own when it demanded that Skyline repurchase them.

Although this aspect of plaintiff's breach of contract claim fails to create a plausible entitlement to relief, plaintiff has stated a valid breach of contract claim based on Skyline's failure to indemnify plaintiff for losses it incurred as a result of Skyline's failure to comply with the above-described provisions of the Agreement. Skyline attempts to avoid this conclusion with three arguments, none of which is persuasive.

First, Skyline contends that plaintiff has not alleged that it notified Skyline of its intent to seek indemnification. According to Skyline, Ohio law[4] provides that any indemnification claim requires prompt, timely notice to the party from which indemnity is sought. In support of this position, Skyline cites two cases, neither of which are helpful: Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau, 725 N.E.2d 646 (Ohio 2000); Globe Indemn. Co. v. Schmitt, 53 N.E.2d 790, 794 (Ohio 1944). Globe Indemn. Co. addressed the issue of common law indemnity rights between alleged co-tortfeasors and stands for the proposition that "one seeking indemnity under an implied contract must prove that proper and timely notice was given to the party from whom indemnity is sought." See Ohio Cas Ins. Co. v. Ford Motor Co., 443 F.Supp. 80, 82 (D.C. Ohio 1977) (citing Globe Indemn. Co., 53 N.E.2d 790). Ormet is also inapposite; it addressed a notice provision in an insurance policy, which required that "when an accident occurs written notice shall be given . . . as soon as practicable." The Agreement, however, contains no such notice provision. Skyline has failed to point to any case law, nor is the court aware of any,

---

[4] Section 23 of the Agreement requires the Agreement to be interpreted under Ohio law. The parties do not dispute that Ohio law applies to this court's interpretation of the Agreement.

9

holding that a plaintiff seeking contractual indemnity, based on a contract without a notice provision, must plead that it properly and timely notified plaintiff that it intended to seek indemnity.

Next, Skyline contends that after plaintiff sold the loans to Fannie Mae, plaintiff could not have breached section 11 of the contract because it could not have "service[d] a loan it does not own" or "incur[red] any expenses or losses in repossessing or disposing of property it does not have a mortgage on." But section 10, which required Skyline to indemnify plaintiff for any losses it suffered as a result of Skyline's failure to comply with its various warranties, still applies Plaintiff therefore has a viable breach of contract claim based on its allegations regarding sections 3, 5, 9, and 10.

Finally, Skyline argues that plaintiff cannot obtain relief from a breach of contract claim because the Agreement provided for "two express remedies as a result of a breach of the [A]greement—repurchase or indemnity by Skyline." But the Agreement does not state that these options constituted the sole remedies for breach of contract, and Skyline points to no legal support for its argument that if a contract provides for a remedy in the event of breach, and the breaching party further breaches the contract by failing to comply with the contractual remedy, the nonbreaching party cannot bring a breach of contract claim arising from such failures.

Thus, for the foregoing reasons, the court denies the motion to dismiss Counts I and II.

**Count III: Negligent Misrepresentation**

Plaintiff continues to fail to state a claim for negligent misrepresentation against Skyline. The court previously explained that plaintiff's allegation that "Skyline, which is engaged in the business of originating loans, provides information as part of its business," was insufficient to

10

allow plaintiff's negligent misrepresentation claim to fall within the information-provider exception to the economic loss doctrine articulated in Moorman Mfg. Co. v. Nat'l Tank Co., 91 Ill.2d 69, 88-89, 91 (Ill. 1982) (holding that a plaintiff generally "cannot recover for solely economic loss under the tort theories of strict liability, negligence, and innocent misrepresentation," but providing an exception for defendants "in the business of supplying information for the guidance of others in their business transactions").

For the information-provider exception to apply, the provision of information must be "central to the business transaction between the parties," and the relevant inquiry is whether "the product was purely information." Guaranty Residential Lending, Inc. v. Int'l Mortg. Center, 305 F.Supp.2d 846, 864 (N.D. Ill. 2004). Plaintiff has alleged that "Skyline's primary business was supplying information that was used by investors to make decisions regarding mortgage investments," but the rest of the complaint makes clear that Skyline's sale of mortgages—a tangible product, not information—is the heart of the instant dispute. Thus, the complaint demonstrates that Skyline's "supplying information" was not central to the business transaction between Skyline and plaintiff. Moreover, the complaint contains explicit allegations—"Skyline originated mortgage loans," "Skyline sold its mortgage loans or had them funded using as security the first mortgages on residential dwellings"—that undermine the claim that Skyline's business was entirely or primarily informational and that Skyline's providing of information was central to the transaction between Skyline and plaintiff.

DuQuoin State Bank v. Norris City State Bank, 595 N.E.2d 678 (Ill. App. Ct. 1992), is not to the contrary. Although plaintiff is correct that DuQuoin upheld a negligent misrepresentation claim when the defendant bank supplied information to the plaintiff bank,

Skyline correctly notes that in DuQuoin, no tangible product was involved—the only transaction was the communication of information. Here, however, the complaint alleges that Skyline originated loans and sold those loans to plaintiff, in addition to providing information. The complaint does not allege that Skyline's product was purely informational.

Plaintiff has thus failed to state a claim for negligent misrepresentation, and Count III is dismissed.

**Count IV: Fraud in the Inducement**

Skyline and Klein ("defendants") argue that because plaintiff has failed to satisfy the heightened pleading requirement of Rule 9(b), the court should dismiss Count IV. To survive a motion to dismiss, Rule 9(b) requires a complaint to allege the "who, what, when, where, and how" of the fraud. Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co., 631 F.3d 436, 441-42 (7th Cir. 2011). By providing specific allegations of who committed the fraud,[5] what the fraudulent statements were, when and where they were made, and "the method by which the misrepresentation was communicated," plaintiff has satisfied that standard. Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992) (quoting Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1993)).

In contending that the complaint's allegations of fraud in the inducement fail to meet Rule 9(b)'s requirements, defendants focus on the complaint's repeated allegations that they "knew or should have known" of fraudulent information contained in the loan packages Skyline

---

[5] The complaint acknowledges that "there may be uncertainty about who committed fraud in this case." In fact, since filing the complaint, plaintiff has voluntarily dismissed two of the appraisers whom it had alleged committed fraud. Nonetheless, the complaint (at Counts IV, V, VIII, and IX) provides specific allegations that suffice to put the various defendants (Skyline and Klein; Thompson; and the borrowers) on notice of the fraud claims against them.

12

submitted to plaintiff. (Plaintiff has also added allegations that defendants knew that the appraisals for the Rymaruk and Kudin loans were forged, and attached as exhibits the forged appraisals.) Skyline and Klein contend that these allegations of knowledge do not satisfy the court's instruction in dismissing the previous complaint that "plaintiff must allege how or why Skyline and Klein knew this information was false."

The court disagrees. Even for fraud claims, knowledge may be averred generally and is not subject to Rule 9(b)'s heightened pleading requirements. Plaintiff has remedied the failings of the previous complaint by adding allegations that defendants were involved with the creation of forged documents and that Klein personally negotiated and executed the assignment of the loans. Plaintiff has thus gone far enough to allow the court to create a plausible story of defendants' knowledge of the fraud. See Hefferman v. Bass, 467 F.3d 596, 602 (7th Cir. 2006) ("[K]nowledge or condition of mind . . . [may be] alleged generally. The complaint does just that, when it says that 'Bass's participation in St. Pierre's fraud and breach of fiduciary duty was knowing and intentional.'") (internal quotations partially omitted). Skyline and Klein's motion to dismiss Count IV is therefore denied.

**Count V: Fraudulent Representations and Concealment**

Defendants next argue that plaintiff has failed to state a claim for fraudulent concealment, both because the complaint lacks detailed factual allegations of defendants' knowledge and because it fails to plead several of the elements of a fraudulent concealment claim. For the following reasons, defendants are incorrect.

Defendants' first argument is that plaintiff has provided no factual allegations that defendants were aware of any inaccurate information in the loan packages, and instead

13

summarily asserts that defendants "knew or should have known that the representations and information contained in the Loan documents was [sic] inaccurate, false, misleading, and contained material omissions." But, as discussed above, general allegations of knowledge are sufficient to survive a motion to dismiss. For the reasons discussed above with respect to Count IV, the complaint has adequately alleged defendants' knowledge.

Defendants next argue that plaintiff has failed to allege all the elements of its fraudulent concealment claim. To state such a claim, plaintiff must allege that: (1) defendants concealed a material fact; (2) they intended to induce a false belief, under circumstances creating a duty to speak; (3) plaintiff could not have discovered the truth through reasonable inspection or inquiry, or was prevented from doing so, and justifiably relied on defendants' silence as representing that the facts did not exist; (4) the concealed information was such that plaintiff would have acted differently if it had been aware of it; and (5) plaintiff's reliance resulted in damages. Stewart v. Thrasher, 610 N.E.2d 799, 804 (Ill. App. Ct. 1993). According to defendants, plaintiff has failed to provide factual allegations supporting the second and third of these five elements.

Defendants' argument that plaintiff has failed to allege a duty to speak is unpersuasive. The complaint alleges that "Skyline and [plaintiff] had a special relationship formed and memorialized by the May 4, 2004[,] Agreement," and "Skyline and Klein maintained licenses in the mortgage broker business, and those licenses created a duty to disclose information that they knew to be concealed and material to the subject transactions with [plaintiff]." Defendants complain that plaintiff has not pled a "special or fiduciary relationship," but these allegations of a contractual relationship and of a duty borne of defendants' mortgage broker licenses are

14

sufficient, at this stage of the litigation, to fulfill the requirement that plaintiff allege defendants' duty to speak.

Defendants are also incorrect that plaintiff has failed to allege that it could not have learned this information or was prevented from doing so, and that its reliance was justifiable. Perhaps defendants' confusion stems from the fact that the relevant allegations are scattered throughout the 43-page complaint. For example, in the section addressed to plaintiff's fraud in the inducement claim (Count IV), the complaint alleges that plaintiff "could not have reasonably learned of the inaccuracies and misleading information prior to entering each [mortgage sale] transaction." Then, in the Count V section, the complaint states that plaintiff "relied on the information provided to it by Skyline and Klein and believe[d] that the information provided was complete and accurate without material omissions [and b]ased on that reliance, [ ] entered into the subject transactions." Although the latter statement, standing alone, might not sufficiently allege that plaintiff justifiably relied on information that it could not have obtained on its own, it is sufficient when combined with the former allegation. Thus, interpreting the complaint as a whole and ignoring the inartful pleading, the court finds that plaintiff has adequately pled the third element of a fraudulent concealment claim.

The court therefore denies defendants' motion to dismiss Count V.

**Count VI: Breach of Contract through Theory of Alter Ego/Piercing Corporate Veil**

Finally, Count VI asks the court to pierce the corporate veil to hold Klein liable for Skyline's alleged breach of contract. A court may pierce the corporate veil when the corporate entity "would otherwise present an obstacle to the protection of private rights, or where the corporation is merely the alter ego or business conduit of the governing or dominant

15

personality." Hystro Products, Inc. v. MNP Corp., 18 F.3d 1384, 1390 (7th Cir. 1994) (interpreting Illinois law). Illinois courts require a plaintiff to plead "a unity of interest and ownership [such] that the separate personalities of the corporation and the individual no longer exist." Sea-Land Servs., Inc. v. Pepper Source, 941 F.2d 519, 520 (7th Cir. 1991) (citation omitted). To determine whether a unity of interest and ownership exists, Illinois courts consider four factors: (1) failure to comply with corporate formalities or maintain adequate corporate records; (2) commingling of funds or assets; (3) undercapitalization; and (4) failure to maintain an arms-length relationship with related entities. Van Dorn Co. v. Future Chemical and Oil Corp., 753 F.2d 565, 570 (7th Cir. 1985).

As was true with the previous complaint, plaintiff has not sufficiently alleged a unity of interest and ownership between Skyline and Klein. Plaintiff alleges that Klein was the president and principal shareholder of Skyline, directed its decisions, and negotiated the Agreement with plaintiff and was aware of Skyline's duties under that Agreement, including the obligation to repurchase any nonconforming loans. As the court previously noted in dismissing the prior complaint, these allegations suggest nothing more than that Klein was an active president of a small company; they do not indicate that Skyline was Klein's alter ego.

Nor has plaintiff added any factual allegations that materially alter the court's analysis. New allegations state that Klein "intentionally undercapitalized" Skyline by failing to obtain corporate insurance and a fidelity bond and by "removing cash flow from the company that prevented Skyline from being able to meet financial obligations that Klein knew existed or would exist." These allegations fail to provide the necessary factual basis to establish a claim of undercapitalization, as required by Twombly and Iqbal. Plaintiff also newly alleges that Klein

16

received payment for his ownership shares prior to creditors, thereby personally benefitting from Skyline's dissolution—but there is nothing atypical about that type of "personal" benefit, which does not indicate that Klein was usurping the corporate form for his own private gains. Taking all the well-pleaded factual allegations in the light most favorable to plaintiff, the court finds that plaintiff has not sufficiently alleged that Klein undercapitalized Skyline, nor has plaintiff even begun to allege that Klein failed to maintain adequate corporate records, commingled his funds or assets with Skyline's, or treated Skyline's assets as his own.

Thus, the court grants defendants' motion to dismiss with respect to Count VI.

## **CONCLUSION**

For the foregoing reasons, the court grants Skyline and Klein's motion to dismiss plaintiff's second amended complaint with respect to Counts III and VI, and denies the motion with respect to Counts I, II, IV, and V. Defendants are directed to answer the second amended complaint on or before August 17, 2011. The parties are directed to prepare and file a joint status report using the court's form on or before August 24, 2011. This matter is set for a report on status September 1, 2011, at 9:00 a.m.


**ENTER:**     **July 27, 2011**

                                                 */s/ Robert W. Gettleman*
                                       **Robert W. Gettleman**
                                       **United States District Judge**